| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>AIRON REGALADO,<br>                             Plaintiff,<br>             -against-<br>ECOLAB INC.,<br>                            Defendants.<br>------------------------------------------------------------ X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 01/07/2016<br><br>14 Civ. 6020 (LGS)<br><br>OPINION AND ORDER |

LORNA G. SCHOFIELD, District Judge:

      This action arises from injuries sustained by Plaintiff Airon Regalado that allegedly were caused by Defendant Ecolab Inc. Defendant moves for summary judgment on Plaintiff's single claim of negligence pursuant to Federal Rule of Civil Procedure 56. Defendant also moves to strike Plaintiff's expert disclosure as untimely. For the following reasons, the motions are denied.

## BACKGROUND

### A. Factual Background

      The facts here are taken from the parties' submissions, resolving all factual disputes and making all inferences in favor of Plaintiff, the non-moving party, as required on a summary judgment motion.

      The issue in this case is whether Defendant is responsible for injuries Plaintiff sustained when a conveyor-type industrial dishwashing machine malfunctioned at the NoMad hotel and burned Plaintiff. Defendant owned and serviced the dish machine in question and leased it to the NoMad. The lease agreement states that Defendant will provide "parts and service [and] maintain the Equipment in good condition," and "Customer may not change, alter, or repair the Equipment." Defendant provided monthly service, and the lease agreement provides that

Defendant is compensated for each monthly service period. Although the NoMad employs mechanics to fix things in the kitchen, they do only simple things like paint and repair tiles and faucets. Plaintiff never saw them repair equipment in the kitchen.

If anything is in the machine -- for example plates -- it continues spitting out water unless it is shut off. When it is necessary to open the door and reach into the machine -- for example to move something that is stuck -- three safety features could keep the machine from operating and spraying hot water. Depressing a red stop button stops the operation of the machine. Depressing the ordinary on-off switch turns the machine off. Finally, what Plaintiff calls the "interrupter" automatically prevents the machine from operating when the door is open. The interrupter consists of two parts, a reed switch and a magnet. If the machine is on and the door is opened, the two parts separate and break the circuit so that the machine cannot run.

Approximately three months before the accident, the red stop button was lost, so employees used the on-off switch when they needed to disable the machine. In the weeks before Plaintiff's injury, the interrupter also was damaged. One of the parts was missing a screw so that it could move, break the circuit and shut down the machine and keep it from operating. The missing screw was replaced, but the part became loose again causing unwanted shutdowns. The machine was repaired again and placed on what Plaintiff called "direct." In effect the interrupter was disabled so that the machine would not shut down; if the door was opened and the machine had something inside, it would not turn off and would continue spitting water. Plaintiff first heard that the machine was on direct two weeks before his accident.

Defendant serviced the machine on December 2, 2013, and reported that everything was in good order. On December 22, 2013, Defendant made a weekend call to service the machine in response to a call from the NoMad about a "down machine," or a machine that would not turn

on. In inspecting the machine, the repairman, Luiz Jimenez, found that the red stop button was pressed in, preventing the machine from turning on, and its cover was missing. Jimenez pulled the red button out to enable the machine to turn on, but made no further repairs to the button. Although Jimenez was not told of any problem with the interrupter, Jimenez noticed that the magnet was cracked and replaced it. Jimenez screwed a new magnet into place without using a washer. According to Defendant's records, this was the last time Defendant serviced the machine before Plaintiff's accident.

At the time of his injuries, Plaintiff was employed as a porter at the NoMad, working on a dish machine and cleaning pots and pans. Working on a dish machine meant working the front of the machine -- loading racks of dishes or other items -- or working the back of the machine and removing the racks after they passed through it. On January 6, 2014, at the end of his shift, to prepare for washing the dish machine, Plaintiff needed to remove curtains and a chain that pulls the racks from inside the machine. After removing the curtains, and as he was removing the chain, the machine suddenly threw hot water and burned Plaintiff. Plaintiff sustained first- and second-degree hot water burns. Obviously, at the time of the accident, the interrupter was not working to prevent the discharge of water when the door was open.

      **B.**    **Relevant Procedural Background - Motion to Strike Plaintiff's Expert**

The facts underlying Defendant's motion to strike Plaintiff's expert disclosure as untimely are as follows. On October 22, 2014, a case management schedule and order was entered on the docket. That order required Plaintiff to submit any expert reports on February 27, 2015. It further required the parties to complete all expert discovery by April 6, 2015. The order further required the parties to submit letters detailing their progress in discovery, including

expert discovery, in both December 2014 and March 2015.  Defendant produced its expert report and completed both fact and expert discovery in a timely manner.

Although required to produce his expert report on February 27, 2015, prior to the submission of Defendant's expert report, Plaintiff disclosed his intent to call an expert in a letter dated April 3, 2015, and produced the expert's report on April 20, 2015 -- eleven days after the close of expert discovery.  Plaintiff did not mention expert discovery or any hardship in the joint status letters dated December 10, 2014, and March 5, 2015, his request to extend fact discovery by letter dated March 3, 2015, or his motion to extend fact discovery dated March 30, 2015, despite the approaching close of expert discovery on April 6, 2015.  On May 15, 2015, Defendant moved to strike Plaintiff's expert disclosure as untimely.

## **STANDARD**

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Young v. United*

*Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 248.

The decision to strike an expert disclosure is entrusted to the discretion of the district court. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37, and its ruling will be reversed only if it constitutes an abuse of discretion.").

## **DISCUSSION**

### I.      Evidentiary Issues

Defendant raises two issues regarding the record to be considered on this summary judgment motion. First, Defendant, by a separate motion, moves to strike Plaintiff's expert disclosure for purposes of both Defendant's summary judgment motion and any trial. Second, Defendant requests in its Reply Memorandum that the Affidavit of Jarleen Rodriguez, Plaintiff's co-worker, submitted by Plaintiff as Exhibit 2 to Plaintiff's Memorandum in Opposition ("Plaintiff's Rodriguez Affidavit") be stricken. [Dkt. 60 at 2-3]. Because the delay in disclosing Plaintiff's expert disclosure does not prejudice Defendant, the motion to strike Plaintiff's expert disclosure is denied. Because Plaintiff's Rodriguez Affidavit does not comply with Rule 56, the affidavit is stricken.

#### A.      Motion to Strike Plaintiff's Expert Report

Federal Rule of Civil Procedure 26(a)(2) requires that a party seeking to call an expert witness at trial "must disclose to the other parties the identity of any witness . . . ." Fed. R. Civ. P. 26(a)(2)(A). This disclosure "must be accompanied by a written report -- prepared and signed

by the witness -- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  "A party must make these disclosures at the times and in the sequence that the court orders." Fed R. Civ. P. 26(a)(2)(D).  If a party fails to make these disclosures or fails to make these disclosures at the times or in the sequence ordered by the court, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

There is no dispute that Plaintiff's expert disclosure was untimely.  This untimeliness was not substantially justified.  Although the health problems of the managing partner of Plaintiff's counsel's firm and ongoing turnover of some of Plaintiff's attorneys participating in this action are unfortunate, these factors cannot give rise to substantial justification here.  Pursuant to the order setting a case management plan for this action, the parties were required to submit joint status letters apprising the Court of their progress in discovery.  Insofar as Plaintiff's counsel required additional time to complete expert discovery, those status letters presented an opportunity to apprise the Court of counsel's circumstances and request an extension of the expert discovery deadline.  No such request was made.  Plaintiff's counsel took no steps prior to the filing of the untimely expert disclosure to apprise the Court of its issues in meeting the expert deadlines set by the scheduling order.  Absent any good faith effort to seek to address its inability to comply with the scheduling order prior to filing an untimely expert disclosure, no substantial justification exists for the untimeliness.

Nevertheless, Defendant's motion to strike Plaintiff's expert disclosure is denied because any prejudice from the untimely disclosure can be eliminated by permitting Defendant to

introduce expert testimony at trial rebutting Plaintiff's expert testimony. To avoid any further delay, no expert depositions will be permitted as is the common practice in New York state court. This opinion does not rely on Plaintiff's expert report.

### B. Application to Strike the Rodriguez Affidavit

Defendant's request to strike Plaintiff's Rodriguez Affidavit is granted because it is not based on Rodriguez's personal knowledge. Rule 56 provides that "[a]n affidavit . . . used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).

Plaintiff's Rodriguez Affidavit does not satisfy this requirement. Mr. Rodriguez's statements describing the work that technicians performed on two occasions before Plaintiff's accident does not purport to be based on personal knowledge. To the contrary, the affidavit states "I learned of this after the accident." Defendant has submitted its own Rodriguez Affidavit, which confirms that Mr. Rodriguez's statements were not based on personal knowledge but rather were based on what he was told.

## II. Summary Judgment

Defendant's motion for summary judgment on Plaintiff's claim of negligence is denied. Plaintiff has adduced sufficient evidence from which a reasonable jury could find that Defendant was negligent in its repair of the machine and thereby caused Plaintiff's injury.

Three elements are required in an action for negligence under New York law: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). To establish duty in an action for negligent repair, a plaintiff must show a defendant's "failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found." *Rogers v. Dorchester Assocs.*,

7

300 N.E.2d 403, 32 N.Y.2d 553, 559 (1973).  A reasonable jury could find for the plaintiff on each of these elements based on the evidence in the record drawing all reasonable inferences in favor of Plaintiff as the non-moving party.

First, the evidence is undisputed that Defendant owned the machine, serviced it monthly, was solely responsible for its repair, and that one of Defendant's technicians inspected and attempted to repair the machine on December 22, 2013.  These undisputed facts, as a matter of law, give rise to a duty of care.  *See Argentina v. 681 Fifth Ave. LLC*, 7 N.Y.S.3d 95, 127 A.D.3d 440, 441 (1st Dep't 2015) ("While [Defendant] owed no contractual duty to plaintiffs regarding the performance of its work, it may nevertheless be liable to them in tort to the extent that its negligent performance of the duties that it performed, pursuant to its contract with defendant building owner, created a dangerous condition that injured plaintiff.").

Second, the evidence taken in the light most favorable to the Plaintiff supports the inference that Defendant was negligent and caused Plaintiff's injury.  Plaintiff was burned when the interrupter on the machine failed to prevent the spray of hot water while the machine door was open.  On the date of the accident, January 6, 2014, the interrupter had been disabled or malfunctioned.  Defendant had serviced the machine, including the interrupter, just fifteen days earlier, on December 22, 2015.  Plaintiff's testimony suggests that the interrupter was disabled at that time; he testified that the machine was placed on "direct" two weeks before his accident.  Only the Defendant was authorized to repair or service the machine, and no evidence identifies anyone else who worked on the machine between December 22, 2015, and Plaintiff's accident.  Construing all inferences in Plainitff's favor, a reasonable jury could conclude both that Defendant was negligent and caused Plaintiff's injury.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to strike Plaintiff's expert report is DENIED, Defendant's motion to strike Plaintiff's Rodriguez Affidavit is GRANTED, and Defendant's motion for summary judgment is DENIED. The Clerk of Court is instructed to close the motions at Docket Nos. 47 and 50.

Dated: January 7, 2016
      New York, New York

                                       **LORNA G. SCHOFIELD**
                                    **UNITED STATES DISTRICT JUDGE**